TYSON, Judge.
 

 I. Background
 

 This Court reviews the federal Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g (2017) ("FERPA"), and the North Carolina Public Records Act,
 
 N.C. Gen. Stat. §§ 132-1
 
 to -11 (2017) (the "Public Records Act"), to determine whether officials of The University of North Carolina at Chapel Hill ("UNC-CH") are required to release students' disciplinary records, who have been found to have violated UNC-CH's sexual assault policy. The following facts were stipulated to by the parties and adopted by the trial court.
 

 DTH Media Corporation; Capitol Broadcasting Company, Inc.; The Charlotte Observer Publishing Company; and, The Durham Herald Company (collectively, "Plaintiffs"), are North Carolina-based news organizations, which regularly cover events at UNC-CH. The defendants are Carol L. Folt, the Chancellor of UNC-CH, and Gavin Young, the Senior Director of Public Records of UNC-CH (collectively, "Defendants"), who are being sued in their official capacities.
 

 Plaintiffs sent a public records request to UNC-CH in a letter dated 30 September 2016, asking for "copies of all public records made or received by [UNC-CH] in connection with a person having been found responsible for rape, sexual assault or any related or lesser included sexual misconduct by [UNC-CH's] Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office."
 

 *521
 
 UNC-CH denied Plaintiffs' request on 28 October 2016 in a letter signed by Joel G. Curran, UNC-CH's Vice-Chancellor for Communications and Public Affairs. Vice-Chancellor Curran concluded the records requested by Plaintiffs are "educational records" as defined by FERPA and are "protected from disclosure by FERPA."
 

 After denial of their request, Plaintiffs filed a complaint and petitioned for an order to show cause against Defendants on 21 November 2016, under the Public Records Act, and the North Carolina Declaratory Judgments Act,
 
 N.C. Gen. Stat. §§ 1-253
 
 to -267. Plaintiffs sought, in part: (1) a preliminary order compelling Defendants to appear and produce the records at issue; (2) an order declaring that the requested records are public records as defined by
 
 N.C. Gen. Stat. § 132-1
 
 ; (3) an order compelling Defendants to permit the inspection and copying of public records pursuant to
 
 N.C. Gen. Stat. § 132-9
 
 (a).
 

 On 21 December 2016, Defendants filed their answer to Plaintiffs' complaint and petition. Following subsequent communications between the parties, including a mediation conducted pursuant to
 
 N.C. Gen. Stat. § 78-38
 
 .3E, Plaintiffs narrowed the scope of their request to encompass records in the custody of UNC-CH and limited to: "(a) the name of any person who, since January 1, 2007, has been found responsible for rape, sexual assault or any related or lesser included sexual misconduct by the [UNC-CH] Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office; (b) the date and nature of each violation for which each such person was found responsible; and (c) the sanctions imposed on each such person for each such violation." Defendants stipulated that UNC-CH retains the records sought by Plaintiffs in their narrowed request. The matter was heard in Wake County Superior Court on 6 April 2017. On 9 May 2017, the trial court entered an order and final judgment denying Plaintiffs' request, as it related to students who had been found responsible for serious sexual misconduct. The court granted Plaintiffs' request for records related to UNC-CH employees, who had been disciplined for such offenses.
 

 The trial court's order and final judgment concluded the Public Records Act does not compel release of student records where "otherwise specifically provided by law." The trial court concluded FERPA "otherwise specifically provides" and grants UNC-CH "discretion to determine whether to release (1) the name of any student found 'responsible' under [UNC-CH's] policy for a 'crime of violence' or 'nonforcible sex offense,' (2) the violation, and (3) the sanction imposed." Plaintiffs timely filed notice of appeal from the trial court's order and final judgment.
 

 Defendants complied with that portion of the trial court's order and final judgment relating to records regarding UNC-CH's employees, and both parties agree UNC-CH employees' records addressed in the order and judgment are not at issue on appeal.
 

 II. Jurisdiction
 

 Jurisdiction lies in this court over appeal of a final judgment of the superior court in a civil case. N.C. Gen. Stat. § 7A-27(b)(1) (2017).
 

 III. Issue
 

 Plaintiffs argue their public record's request for the disciplinary information of UNC-CH students falls within an exemption to FERPA's non-disclosure provisions and Defendants are required to comply with their Public Records Act request.
 

 IV. Standard of Review
 

 "Questions of statutory interpretation are questions of law, which are reviewed
 
 de novo
 
 by an appellate court."
 
 In re Proposed Assessments v. Jefferson-Pilot Life Ins. Co.
 
 ,
 
 161 N.C. App. 558
 
 , 559,
 
 589 S.E.2d 179
 
 , 180 (2003) (citation omitted). This appeal involves questions regarding the interpretation of FERPA and the Public Records Act. We review
 
 de novo
 
 .
 

 V. Analysis
 

 A. North Carolina Public Records Act
 

 The Public Records Act is codified at
 
 N.C. Gen. Stat. §§ 132-1
 
 to -11 (2017). The public policy underlying the Public Records Act is enunciated by the General Assembly at
 
 *522
 

 N.C. Gen. Stat. § 132-1
 
 (b), which provides, "The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost[.]"
 

 The Public Records Act "affords the public a broad right of access to records in the possession of public agencies and their officials."
 
 Times-News Publ'g Co. v. State of N.C.,
 

 124 N.C. App. 175
 
 , 177,
 
 476 S.E.2d 450
 
 , 451-52 (1996),
 
 disc. review denied,
 

 345 N.C. 645
 
 ,
 
 483 S.E.2d 717
 
 (1997). "[T]he purpose of the Public Records Act is to grant liberal access to documents that meet the general definition of 'public records[.]' "
 
 Jackson v. Charlotte Mecklenburg Hosp. Auth.
 
 ,
 
 238 N.C. App. 351
 
 , 352,
 
 768 S.E.2d 23
 
 , 24 (2014).
 

 The Public Records Act defines "public records" to include "all ... material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions."
 
 N.C. Gen. Stat. § 132-1
 
 (a).
 

 The Public Records Act permits public access to all public records in an agency's possession "
 
 unless
 
 either the agency or the record is specifically exempted from the statute's mandate."
 
 Times-News,
 

 124 N.C. App. at 177
 
 ,
 
 476 S.E.2d at 452
 
 (emphasis supplied). "Exceptions and exemptions to the Public Records Act must be construed narrowly."
 
 Carter-Hubbard Publ'g Co., Inc. v. WRMC Hosp. Operating Corp.
 
 ,
 
 178 N.C. App. 621
 
 , 624,
 
 633 S.E.2d 682
 
 , 684 (2006) (citation omitted),
 
 aff'd
 
 ,
 
 361 N.C. 233
 
 ,
 
 641 S.E.2d 301
 
 (2007).
 

 Here, the trial court correctly determined that the UNC-CH student disciplinary records requested by Plaintiffs are "public records" as defined by the Public Records Act at
 
 N.C. Gen. Stat. § 132-1
 
 (b). Neither party contests the trial court's determination and conclusion that the records at issue are "public records" under the Public Records Act. Also, neither party disputes that UNC-CH is a public agency of North Carolina and is subject to the Public Records Act.
 
 See
 

 N.C. Gen. Stat. § 132-1
 
 (b).
 

 B. Family Educational Rights and Privacy Act
 

 The Congress of the United States enacted FERPA in 1974 "under its spending power to condition the receipt of federal funds on certain requirements relating to the access and disclosure of student educational records."
 
 Gonzaga Univ. v. Doe,
 

 536 U.S. 273
 
 , 278,
 
 122 S.Ct. 2268
 
 , 2272-73,
 
 153 L.Ed.2d 309
 
 , 318 (2002). "The Act directs the Secretary of Education to withhold federal funds from any public or private 'educational agency or institution' that fails to comply with these conditions."
 

 Id.
 

 FERPA provides, in part, that:
 

 No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein ...) of students without the written consent of their parents to any individual, agency, or organization. ...
 

 20 U.S.C. § 1232g(b)(1).
 

 FERPA defines "education records" as "those records, files, documents, and other materials which-(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(a)(4)(A) ;
 
 see also
 

 34 C.F.R. § 99.3
 
 (specifying definition of "education records" under FERPA). Plaintiffs and Defendants concede that UNC-CH receives federal funding and is generally subject to FERPA.
 

 The parties also do not dispute the records Plaintiffs requested are "educational records." Twenty years ago with similar parties, this Court recognized that student disciplinary records are "educational records" for purposes of FERPA.
 
 DTH Publ'g Corp. v. UNC-Chapel Hill
 
 ,
 
 128 N.C. App. 534
 
 , 541,
 
 496 S.E.2d 8
 
 , 13,
 
 disc. review denied
 
 ,
 
 348 N.C. 496
 
 ,
 
 510 S.E.2d 382
 
 (1998) ;
 
 see
 

 United States v. Miami Univ.,
 

 294 F.3d 797
 
 , 812 (6th Cir. 2002) ("[S]tudent disciplinary records are education records because they directly
 
 *523
 
 relate to a student and are kept by that student's university.").
 

 FERPA permits the release of certain student disciplinary records in several situations. FERPA expressly exempts and does not prohibit disclosure "to an alleged victim of any crime of violence ... or a nonforcible sex offense, the final results of any disciplinary proceeding conducted by the institution against the alleged perpetrator ...." 20 U.S.C. § 1232g(b)(6)(A). Most relevant here is another exemption of FERPA, which allows an educational institution to release "the final results of any disciplinary proceeding ... if the institution determines as a result of that disciplinary proceeding that the student
 
 *524
 
 committed a violation of the institution's rules or policies with respect to such crime or offense." 20 U.S.C. § 1232g(b)(6)(B).
 

 Plaintiffs assert: (1) this express exemption removes their request for disclosure from exclusion under FERPA's sanctions; (2) FERPA does not prohibit Defendants from complying with their request; and, (3) as a result, the express intent of the Public Records Act requires Defendants to comply with Plaintiffs' request.
 

 Defendants contend § 1232g(b)(6)(B) of FERPA impliedly grants and requires educational institutions to exercise discretion when deciding whether to release the student disciplinary records admittedly exempted from FERPA's non-disclosure provisions. They argue the binding Public Records Act conflicts with § 1232g(b)(6)(B) by removing the institution's discretion to decide whether to release the exempted records. Defendants assert "the federal Family Educational Rights and Privacy Act ... governs the records at issue and precludes their release." Defendants conclude that to the extent the Public Records Act conflicts with FERPA's implied grant of discretion to UNC-CH, FERPA is supreme and pre-empts our Public Records Act, as federal law. The trial court agreed with Defendants' arguments.
 

 C. Reconciling the Public Records Act and FERPA
 

 1.
 
 Canons of Statutory Interpretation
 

 To assess the parties' arguments, we must first determine whether a conflict exists between FERPA and the Public Records Act. In reviewing the relationship and any overlapping coverages between FERPA and the Public Records Act, we are guided by several well-established principles of statutory construction.
 

 "The principal goal of statutory construction is to accomplish the legislative intent."
 
 Lenox, Inc. v. Tolson
 
 ,
 
 353 N.C. 659
 
 , 664,
 
 548 S.E.2d 513
 
 , 517 (2001) (citing
 
 Polaroid Corp. v. Offerman
 
 ,
 
 349 N.C. 290
 
 , 297,
 
 507 S.E.2d 284
 
 , 290 (1998) ). "The best indicia of that intent are the [plain] language of the statute ..., the spirit of the act and what the act seeks to accomplish."
 
 Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs
 
 ,
 
 299 N.C. 620
 
 , 629,
 
 265 S.E.2d 379
 
 , 385 (1980) (citations omitted).
 

 "When construing legislative provisions, this Court looks first to the plain meaning of the words of the statute itself[.]"
 
 State v. Ward
 
 ,
 
 364 N.C. 157
 
 , 160,
 
 694 S.E.2d 729
 
 , 731 (2010). "Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible."
 
 Taylor v. Robinson
 
 ,
 
 131 N.C. App. 337
 
 , 338,
 
 508 S.E.2d 289
 
 , 291 (1998) (internal quotation marks and ellipses omitted) (citing
 
 Meyer v. Walls,
 

 122 N.C. App. 507
 
 , 512,
 
 471 S.E.2d 422
 
 , 426 (1996),
 
 aff'd in part, rev'd in part,
 

 347 N.C. 97
 
 ,
 
 489 S.E.2d 880
 
 (1997) ).
 

 " '[S]tatutes
 
 in pari materia
 
 must be read in context with each other.' "
 
 News & Observer Publ'g Co. v. Wake Cty. Hosp. System, Inc.
 
 ,
 
 55 N.C. App. 1
 
 , 7,
 
 284 S.E.2d 542
 
 , 546 (1981) (quoting
 
 Cedar Creek Enters. v. Dep't of Motor Vehicles
 
 ,
 
 290 N.C. 450
 
 , 454,
 
 226 S.E.2d 336
 
 , 338 (1976) ). " '
 
 In pari materia
 
 ' is defined as '[u]pon the same matter or subject.' "
 
 Id.
 
 at 7-8,
 
 284 S.E.2d at 546
 
 (quoting Black's Law Dictionary 898 (4th ed. 1968) ).
 

 Here, the "plain language" of § 1232g(b)(6)(B) of FERPA states:
 

 Nothing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding ... if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense.
 

 Defendants argue, and the trial court agreed, that this language requires UNC-CH to exercise discretion on whether to release the admittedly public records of the final results of disciplinary hearings. Defendants have not cited any case law interpreting FERPA to support their proposed interpretation of this provision. Plaintiffs argue the plain language of the statute does not support Defendants' and the trial court's interpretation.
 

 Our comprehensive review of relevant case and statutory law from this and other jurisdictions, both state and federal, fails to disclose any authority interpreting FERPA's § 1232g(b)(6)(B) as providing to public postsecondary educational institutions an express absolute discretionary authority over whether to release FERPA-exempted student disciplinary records and subject to disclosure under its express terms.
 

 The language "[n]othing ... shall be construed to prohibit an institution ... from disclosing the final results of any disciplinary proceeding" does not indicate any congressional intent to
 
 require
 
 educational institutions to exercise discretion over or before releasing FERPA-exempted student disciplinary records in contravention of unambiguous and broad state public records laws expressly requiring such disclosure. No language in § 1232g(b)(6)(B) or the corresponding Code of Federal Regulations provisions speak to whether an educational institution
 
 must
 
 exercise discretion over whether to disclose student disciplinary records. 20 U.S.C. § 1232g(b)(6)(B), 34 C.F.R. 99.31(a)(14). Defendants do not argue that the records Plaintiffs requested are prohibited or exempted from disclosure, or cannot be disclosed or released under § 1232g(b)(6)(B) without potential sanctions under FERPA.
 

 The only language in § 1232g(b)(6)(B) that concerns an educational institution's purported "discretion" is: "if the institution
 
 determines
 
 as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense." 20 U.S.C. § 1232g(b)(6)(B) (emphasis supplied). Plaintiffs' records request is limited to students, who UNC-CH has already expressly determined to have engaged in such misconduct, and the records of which are expressly subject to disclosure under FERPA. 20 U.S.C. § 1232g(b)(6)(B).
 

 UNC-CH's process used to determine whether a student violated school policy or crimes involves a completely different and separate determination from whether the admittedly public records relating to the discipline previously imposed for the misconduct should be released. FERPA's plain language in § 1232g(b)(6)(B) does not condition an educational institution's compliance on requiring the exercise of discretion to determine whether to release disciplinary records that FERPA expressly exempts from non-disclosure, in the face of a public records request.
 

 Defendants' assertion of an absolute authority to exercise discretion on whether to release non-exempt records is undercut by other provisions of FERPA. § 1232g(b)(2)(B) provides:
 

 (2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless-
 

 ....
 

 (B) except as provided in paragraph (1)(J), such information is furnished in compliance with
 
 judicial order
 
 , or pursuant to any lawfully issued subpoena, upon condition that parents and the students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency ....
 

 20 U.S.C. § 1232g(b)(2)(B) (emphasis supplied).
 

 The regulations implementing this provision provide:
 

 (a) An educational agency or institution may disclose personally identifiable information from an education record of a student without the consent required by
 
 *525
 
 § 99.30 if the disclosure meets one or more of the following conditions:
 

 ....
 

 (9)(i) The disclosure is to comply with a
 
 judicial order
 
 or lawfully issued subpoena.
 

 34 C.F.R. 99.31(a)(9)(i) (emphasis supplied).
 

 Defendants' position that FERPA grants them absolute discretion to decide whether to release exempt disciplinary records is contradicted by these provisions, which do not prohibit an educational institution from complying with a judicial order. § 1232g(b)(2)(B) makes no distinction between a judicial order that
 
 requires
 
 disclosure and an order that
 
 authorizes
 
 disclosure. If a court orders an educational institution to release an exempt record, § 1232g(b)(2)(B) does not indicate the institution would be in violation of FERPA by complying with a mandatory court order. 20 U.S.C. § 1232g(b)(2)(B) ; 34 C.F.R. 99.31(a)(9)(i).
 

 However, we note that we do not interpret § 1232g(b)(2)(B) as granting a court the authority to remove an education record's non-disclosable status by ordering its release.
 
 See
 

 Press-Citizen Co. v. Univ. of Iowa,
 

 817 N.W.2d 480
 
 , 493 (Iowa 2012) (stating that "[it] would make no sense to interpret the 'judicial order' exception" in a way that would mean FERPA only has effect until a party requesting records obtains a court order compelling release).
 

 Interpreting § 1232g(b)(2)(B) and § 1232g(b)(6)(B) together indicates an educational institution would not be subject to loss of funding or other sanction for complying with a judicial order mandating disclosure of records that are exempt from FERPA's protections. 20 U.S.C. § 1232g(b)(2)(B) ; § 1232g(b)(6)(B) ;
 
 see
 

 In re Hayes
 
 ,
 
 199 N.C. App. 69
 
 , 79,
 
 681 S.E.2d 395
 
 , 401 (2009) ("Words and phrases of a statute are to be construed as a part of the composite whole[.]"),
 
 disc. review denied
 
 ,
 
 363 N.C. 803
 
 ,
 
 690 S.E.2d 695
 
 (2010).
 

 2.
 
 Public Records Held by Public Agency
 

 We decline to interpret FERPA as advocated by Defendants. Such an interpretation conflicts with both the Public Records Act's mandatory disclosure requirements and the plain meaning of FERPA's § 1232g(b)(6)(B), which allows disclosure.
 
 See
 

 Taylor
 
 ,
 
 131 N.C. App. at 338
 
 ,
 
 508 S.E.2d at 291
 
 ("Interpretations that would create a conflict between two or more statutes are to be avoided, and statutes should be reconciled with each other whenever possible.").
 

 The disciplinary records at issue are stipulated by the parties to be "public records," and held by a "public agency" subject to the Public Records Act and that § 1232g(b)(6)(B) exempts them from FERPA's general non-disclosure of educational records.
 

 3.
 
 Limitations on Disclosure
 

 Plaintiffs request:
 

 (a) the name of any person who, since January 1, 2007, has been found responsible for rape, sexual assault or any related or lesser included sexual misconduct by the [UNC-CH] Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office; (b)
 
 the date
 
 and nature of each violation for which each such person was found responsible; and (c) the sanctions imposed on each such person for each such violation. (Emphasis supplied).
 

 FERPA only authorizes disclosure of "the
 
 name
 
 of the student, the
 
 violation
 
 committed, and any
 
 sanction
 
 imposed by the institution on that student" from the general rule of non-disclosure of disciplinary records. 20 U.S.C. § 1232g(b)(6)(B) (emphasis supplied). The dates of offenses requested by Plaintiffs are not disclosable under FERPA.
 
 See
 
 id.
 

 N.C. Gen. Stat. § 132-1
 
 (b) provides that the public may obtain copies of public records "unless
 
 otherwise specifically provided by law.
 
 "
 
 N.C. Gen. Stat. § 132-1
 
 (b) (emphasis supplied). Because § 1232g(b)(6)(B)"otherwise specifically provide[s]" that only the information listed therein is subject to disclosure, the dates of student offenses are not subject to disclosure under the Public Records Act.
 
 See
 
 id.
 

 ; 20 U.S.C. § 1232g(b)(6)(B).
 

 No conflict exists between FERPA and the Public Records Act for UNC-CH to release the public records within Plaintiffs' limited and narrow requests. The express terms of FERPA permit the disclosure of the information requested by Plaintiffs, except for the dates of violations.
 
 See
 

 *526
 
 20 U.S.C. § 1232g(b)(6)(B). Defendants concede that if FERPA does not provide them the discretion to withhold what are admitted to be public records, they are compelled to release the records.
 

 As qualified above, we hold Defendants, as administrators of a public agency, are required to comply with Plaintiffs' request to release the public records at issue under the Public Records Act. FERPA's § 1232g(b)(6)(B) does not prohibit Defendants' compliance, to the extent Plaintiffs' request the names of the offenders, the nature of each violation, and the sanctions imposed. Defendants' arguments are overruled.
 

 D. Federal Pre-emption
 

 Defendants also argue FERPA pre-empts the Public Records Act with respect to the Public Records Act's mandatory disclosure requirements. We disagree.
 

 The Supremacy Clause of the Constitution of the United States provides that the laws of the United States, the Constitution and treaties "shall be the supreme Law of the Land." U.S. Const. Art. VI, cl 2. "Congress may pre-empt, i.e., invalidate, a state law through federal legislation" either expressly or implicitly.
 
 Oneok, Inc. v. Learjet, Inc.
 
 , --- U.S. ----, ----,
 
 135 S.Ct. 1591
 
 , 1595,
 
 191 L.Ed.2d 511
 
 , 517 (2015). "A reviewing court confronting this question begins its analysis with a presumption against federal preemption."
 
 State ex rel. Utilities Comm'n v. Carolina Power & Light Co.
 
 ,
 
 359 N.C. 516
 
 , 525,
 
 614 S.E.2d 281
 
 , 287 (2005) (citing
 
 Hillsborough Cty. v. Automated Med. Labs., Inc.
 
 ,
 
 471 U.S. 707
 
 , 715,
 
 105 S.Ct. 2371
 
 , 2376,
 
 85 L.Ed.2d 714
 
 , 722-23 (1985) ).
 

 The Congress of the United States may expressly pre-empt a state law "if the federal law contains explicit pre-emptive language."
 
 Salzer v. King Kong Zoo
 
 ,
 
 242 N.C. App. 120
 
 , 123,
 
 773 S.E.2d 548
 
 , 550 (2015) (internal quotation marks and citations omitted). With respect to Plaintiffs' public records request, FERPA does not expressly pre-empt the Public Records Act, as neither § 1232g(b)(6)(B) nor any other provision of FERPA contains explicit language stating it pre-empts state public records laws.
 
 See
 
 id.
 

 Defendants also argue UNC-CH is not required to comply with Plaintiffs' public records request under the theory of federal "implicit pre-emption." Implicit pre-emption can occur through either "conflict" or "field" pre-emption.
 

 Id.
 

 at 123-24
 
 ,
 
 773 S.E.2d at 551
 
 . Field pre-emption occurs where Congress "intended to foreclose any state regulation in the area, irrespective of whether state law is consistent with federal standards."
 
 Oneok
 
 , --- U.S. at ----,
 
 135 S.Ct. at 1595
 
 ,
 
 191 L.Ed.2d at 511
 
 (citation and quotation marks omitted). "In such situations, Congress has forbidden the State to take action in the field that the federal statute pre-empts."
 

 Id.
 

 (emphasis omitted).
 

 Field pre-emption occurs when the federal government either "completely occupies a given field or an identifiable portion of it."
 
 Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n
 
 ,
 
 461 U.S. 190
 
 , 212-13,
 
 103 S.Ct. 1713
 
 , 1727,
 
 75 L.Ed.2d 752
 
 , 770 (1983) (citation omitted).
 

 The intent to displace state law altogether can be inferred from a framework of regulation so pervasive ... that Congress left no room for the States to supplement it or where there is a federal interest ... so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.
 

 Arizona v. United States
 
 ,
 
 567 U.S. 387
 
 , 399,
 
 132 S.Ct. 2492
 
 , 2501,
 
 183 L.Ed.2d 351
 
 , 369 (2012) (internal quotations and citations omitted). "Field pre-emption is wrought by a manifestation of congressional intent to occupy an entire field such that even without a federal rule on some particular matter within the field, state regulation on that matter is pre-empted, leaving it untouched by either state or federal law."
 
 Guyton v. FM Lending Servs., Inc.
 
 ,
 
 199 N.C. App. 30
 
 , 44,
 
 681 S.E.2d 465
 
 , 476 (2009) (citation omitted).
 

 Here, FERPA contains no manifestation of congressional intent to occupy the field of public educational records and particularly those which are expressly exempted from FERPA's non-disclosure rules. The plain language of § 1232g(b)(6)(B) does not manifest such an intent. In looking to congressional intent, the statements from the Congressional Record of the U.S. Representative who
 
 *527
 
 introduced the amendment that would be codified as § 1232g(b)(6)(B) of FERPA is salient and compelling. The stated intent and purpose of § 1232g(b)(6)(B) is to:
 

 [D]eal with the Family Educational Rights and Privacy Act that was passed in 1974 that basically has allowed universities, Federal[ly funded] universities, to withhold the release of names of students found by disciplinary proceedings to have committed crimes[.] I believe there should be a balance between one student's right of privacy to another student's right to know about a serious crime in his or her college community. The Foley amendment to the Higher Education Amendments Act of 1998 [ P.L. 105-244 ] provides a well-balanced solution to the problem. It would remove the Federal protection that disciplinary records enjoy and
 
 make reporting subject to the State laws that apply.
 

 144 Cong. Rec. H2,984, (daily ed. May 7, 1998) (statement of sponsor Rep. Foley) (emphasis supplied);
 
 see
 
 Zach Greenberg & Adam Goldstein,
 
 Baking Common Sense into the FERPA Cake: How to Meaningfully Protect Student Rights and the Public Interest
 
 ,
 
 44 J. Legis. 22
 
 , 26 (2017).
 

 No indication from the text of § 1232g(b)(6)(B) nor within its legislative history supports the contention that Congress intended to occupy the field of educational records to such an extent that FERPA would pre-empt state public records laws with respect to public educational records that are expressly exempted from FERPA's protections.
 

 The legislative history shows Congress intended that records exempted from FERPA under § 1232g(b)(6)(B) would be "subject to the State laws that apply." 144 Cong. Rec. H2,984, (daily ed. May 7, 1998) (statement of sponsor Rep. Foley). This intent is plainly inconsistent with "[t]he intent to displace state law."
 
 Arizona
 
 ,
 
 567 U.S. at 399
 
 ,
 
 132 S.Ct. at 2501
 
 ,
 
 183 L.Ed. 2d at 369
 
 . FERPA does not pre-empt the Public Records Law under the "field pre-emption" theory.
 
 See
 
 id.
 

 Defendants also assert implied pre-emption under the "conflict pre-emption" theory. Conflict pre-emption occurs in two circumstances: (1) "where compliance with both state and federal law is impossible" and (2) "where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."
 
 Oneok,
 
 --- U.S. at ----,
 
 135 S.Ct. at 1595
 
 ,
 
 191 L.Ed.2d at 517
 
 (internal quotation marks and citation omitted).
 

 With regard to the first type of conflict pre-emption, it is possible for UNC-CH to comply with both § 1232g(b)(6)(B) and the Public Records Act. Whereas § 1232g(b)(6)(B) allows UNC-CH to disclose the records at issue without federal sanction, the Public Records Act expressly requires the requested records to be released. As discussed above, and contrary to Defendants' assertion, FERPA does not expressly or impliedly grant educational institutions the absolute discretion to decide whether to release exempt educational records.
 
 See
 
 20 U.S.C. § 1232g(b)(6)(B). Defendants would not violate § 1232g(b)(6)(B) by disclosing and releasing the records Plaintiffs requested in order to comply with the Public Records Act.
 

 With regard to the second type of conflict pre-emption Defendants assert, the Public Records Act disclosure requirements do not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."
 
 See
 

 Oneok,
 
 --- U.S. at ----,
 
 135 S.Ct. at 1595
 
 ,
 
 191 L.Ed.2d at 517
 
 . The plain text of § 1232g(b)(6)(B) permits Defendants disclosure of the limited information specifically listed therein.
 
 See
 
 20 U.S.C. § 1232g(b)(6)(B). No indication in § 1232g(b)(6)(B) nor elsewhere in FERPA supports the contention that Congress established the objective of barring public records requests of information that it expressly exempted from FERPA's non-disclosure provisions.
 

 The legislative history of § 1232g(b)(6)(B) indicates Congress' intent and objective in amending FERPA was to strike "a balance" between students' privacy rights and other students' and their parents' rights to know about dangerous individuals in campus communities.
 
 See
 
 144 Cong. Rec. H2,984, (daily ed. May 7, 1998) (statement of Rep. Foley). Congress decided to strike this balance by "remov[ing] the Federal protection that disciplinary
 
 *528
 
 records enjoy and make reporting subject to the State laws that apply."
 

 Id.
 

 Compelling Defendants' compliance with the Public Records Act with regard to the limited and exempted information Plaintiffs have requested does not "stand[ ] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."
 
 Oneok,
 
 --- U.S. at ----,
 
 135 S.Ct. at 1595
 
 ,
 
 191 L.Ed. 2d at 517
 
 .
 

 Defendants cite
 
 Fidelity Federal Savings and Loan Ass'n v. de la Cuesta
 
 ,
 
 458 U.S. 141
 
 ,
 
 102 S.Ct. 3014
 
 ,
 
 73 L.Ed.2d 664
 
 (1982), to support their pre-emption arguments.
 
 Fidelity Federal
 
 involved a regulation issued by the Federal Home Loan Bank Board ("FHLBB") that permitted federally-chartered savings and loan associations to exercise due-on-sale clauses.
 
 458 U.S. at 141
 
 ,
 
 102 S.Ct. at 3016-17
 
 ,
 
 73 L.Ed.2d at 664
 
 . The preamble to the regulation provided "that the due-on-sale practices of federal savings and loan associations shall be governed 'exclusively by Federal law' and that the association 'shall not be bound by or subject to any conflicting State law which imposes different ... due-on-sale requirements.' "
 

 Id.
 

 at 147
 
 ,
 
 102 S.Ct. at 3019
 
 ,
 
 73 L.Ed.2d at 671
 
 . California law limited mortgage lenders' exercise of due-on-sale clauses.
 

 Id.
 

 at 148-49
 
 ,
 
 102 S.Ct. at 3019-20
 
 ,
 
 73 L.Ed.2d at 672
 
 . California homeowners sued Fidelity Federal Savings and Loan Association for exercising the due-on-sale clauses in violation of California law.
 

 Id.
 

 The Supreme Court of the United States determined the FHLBB's regulation pre-empted California law.
 

 Id.
 

 at 159
 
 ,
 
 102 S.Ct. at 3025-26
 
 ,
 
 73 L.Ed.2d at 679
 
 . Defendants cite this case for their proposition, "[w]here Congress legislates to define the discretion an organization may exercise, that legislation preempts state law curtailing that discretion." Contrary to Defendants' assertion,
 
 Fidelity Federal
 
 is not analogous to the situation before us. The Supreme Court determined the FHLBB's regulation pre-empted California's conflicting law because the preamble to the FHLBB regulation expressly stated that federal savings and loans would not be subject to any state laws that imposed different requirements from federal laws.
 

 Id.
 

 An additional FHLBB regulation stated, "the due-on-sale practices of federal savings and loans 'shall be governed exclusively by the Board's regulations in preemption of and without regard to any limitations imposed by state law on either their inclusion or exercise.' "
 

 Id.
 

 (citation omitted).
 

 Defendants also cite
 
 Andrews v. Federal Home Loan Bank
 
 ,
 
 998 F.2d 214
 
 (4th Cir. 1993), for the proposition that where federal law allows for an organization to exercise discretion, any state law taking away that discretion is pre-empted. In
 
 Andrews
 
 , the United States Court of Appeals for the Fourth Circuit held that where federal law expressly provided, "The directors of each Federal Home Loan Bank ... shall have power ... to select, employ, and fix the compensation of such officers, employees, attorneys, and agents ... and to
 
 dismiss at pleasure
 
 such officers, employees, attorneys, and agents[,]" a dismissed bank employee's wrongful termination claim under state law was pre-empted.
 
 998 F.2d at 220
 
 (emphasis in original) (citation omitted).
 

 Unlike the express language of the federal statute in
 
 Andrews
 
 , nothing in § 1232g(b)(6)(B) of FERPA purports to grant an educational institution express discretion over the release of exempt student records. To read § 1232g(b)(6)(B) as granting such discretion would contravene the intent of Congress to preserve or give states authority over disclosure of exempt student disciplinary records.
 
 See
 
 144 Cong. Rec. H2,984, (daily ed. May 7, 1998) (statement of sponsor Rep. Foley).
 

 Fidelity Federal
 
 and
 
 Andrews
 
 are patently distinguishable from the case at hand, because neither § 1232g(b)(6)(B), any other provision of FERPA, nor any relevant federal regulations expressly or impliedly pre-empt state law to grant educational institutions discretion over disclosure of exempt student disciplinary records.
 
 See
 
 ,
 
 e.g.
 
 , 20 U.S.C. § 1232g(b)(6)(B).
 

 Federal law does not pre-empt the Public Records Act with regard to the specific limited information sought in Plaintiffs' public records request, which is not otherwise prohibited from disclosure under § 1232g(b)(6)(B) of FERPA. Defendants
 
 *529
 
 have failed to overcome the presumption against federal pre-emption and their arguments are overruled.
 
 See
 

 Carolina Power & Light Co.
 
 ,
 
 359 N.C. at 525
 
 ,
 
 614 S.E.2d at 287
 
 (stating the rule of presumption against federal pre-emption).
 

 E. Policy Arguments
 

 Defendants also assert numerous "policy arguments" concerning the effects of potential disclosure of the requested records at issue under Title IX.
 
 See
 

 20 U.S.C. §§ 1681
 
 - 1688. After concluding that FERPA pre-empted the Public Records Act, the trial court declined to address Defendants' policy arguments, stating, "[T]he Court has not considered the policy reasons for UNC[-CH]'s exercise of discretion, UNC[-CH]'s desire to protect and nurture its students, or any other potentialities of disclosure."
 

 Defendants argue the release of the specific records requested by Plaintiffs would interfere with UNC-CH's Title IX process for dealing with sexual assault by: (1) deterring victims and witnesses from coming forward and participating in UNC-CH's Title IX process; and, (2) by jeopardizing the safety of alleged sexual assault perpetrators.
 

 " 'It is critical to our system of government and the expectation of our citizens that the courts not assume the role of legislatures.' Normally, questions regarding public policy are for legislative determination."
 
 In re N.T.
 
 ,
 
 214 N.C. App. 136
 
 , 144,
 
 715 S.E.2d 183
 
 , 188 (2011) (quoting
 
 Cochrane v. City of Charlotte
 
 ,
 
 148 N.C. App. 621
 
 , 628,
 
 559 S.E.2d 260
 
 , 265 (2002) ). We do not address the asserted merits of Defendants' policy arguments.
 

 We note in passing, FERPA specifically mandates that any disclosures "may include the name of any other student,
 
 such as a victim or witness, only with the written consent
 
 of that other student." 20 U.S.C. § 1232g(b)(6)(C) (emphasis supplied).
 

 VI. Conclusion
 

 The Public Records Act requires UNC-CH, a public agency, to comply with Plaintiffs' public records request. FERPA does not prohibit the disclosure of the limited information requested by Plaintiffs, except for the dates of offenses. No indication from the text of § 1232g(b)(6)(B) or within its legislative history supports Defendants' assertion that Congress intended to occupy the field of educational records to such an extent that FERPA pre-empts state public records laws with respect to public educational records that are expressly exempted from FERPA's protections. The legislative history of the 1998 amendments to FERPA shows Congress intended that records exempted from FERPA under § 1232g(b)(6)(B) would be "subject to the State laws that apply." 144 Cong. Rec. H2,984, (daily ed. May 7, 1998) (statement of sponsor Rep. Foley)
 

 FERPA expressly limits the educational records release and disclosures to:
 

 the final results of any disciplinary proceeding-[and] (i) shall include only the name of the student, the violation committed, and any sanction imposed by the institution on that student; and (ii) may include the name of any other student, such as a victim or witness, only with the written consent of that other student.
 

 20 U.S.C. § 1232g(b)(6)(B)-(C).
 

 Defendants must comply with Plaintiffs' public records request to release the student disciplinary records at issue, as provided above. That portion of the superior court's order and judgment appealed from, and as contrary to our holding, is reversed. This cause is remanded to the superior court for further proceedings as are necessary and consistent herewith.
 
 It is so ordered.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 Judges BRYANT and ELMORE concur.