TIMES-NEWS PUBLISHING COMPANY, INC., d/b/a TIMES NEWS, PLAINTIFF v. STATE OF NORTH CAROLINA AND STEVE A. BALOG IN HIS CAPACITY AS DISTRICT ATTORNEY FOR PROSECUTORIAL DISTRICT 15A OF THE STATE OF NORTH CAROLINA, DEFENDANTS

No. COA95-1321

(Filed 15 October 1996)

**Records of Instruments, Documents, or Things § 1 (NCI4th)— trial exhibits—return to prosecutor for retrial—not public records subject to disclosure**

Even though exhibits may have become public records subject to disclosure when they were admitted into evidence at a

TIMES-NEWS PUBLISHING CO. v. STATE OF N.C.

[124 N.C. App. 175 (1996)]

criminal defendant's original murder trial and in the possession of the clerk of court, the exhibits once again became "records of criminal investigations" which were exempt from disclosure under the Public Records Act when they were returned to the district attorney for use in the reinvestigation and retrial of defendant for the murders. N.C.G.S. §§ 132-1.4(a) and (c).

**Am Jur 2d, Records and Recording Laws §§ 27, 29.**

Appeal by defendants from order entered 27 September 1995 by Judge James C. Spencer, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 27 August 1996.

*The Law Firm of John A. Bussian, P.A., by John A. Bussian, for plaintiff-appellee.*

*Attorney General Michael F. Easley, by Chief Deputy Attorney General Andrew A. Vanore, Jr. and Assistant Attorney General K. D. Sturgis, for defendants-appellants.*

WALKER, Judge.

In November 1992, Mark E. Crotts was convicted of first degree murder. Following the Supreme Court's decision granting Crotts a new trial, the clerk of court was ordered to return to the parties the evidence which was introduced at trial, including but not limited to the murder weapon, blood scrapings, crime scene photographs, fingerprints, and clothing worn by the victims at the time of their deaths.

On 30 June 1995, the plaintiff, Times-News Publishing Company, Inc. (Times News), requested pursuant to the Public Records Act that "[the District Attorney] make available to the Times-News a transcript of the original trial, all photographs, documents or other written or taped correspondence submitted as evidence during the October, 1992 trial and any judgments or other documentation that falls in the public domain" (collectively referred to as trial exhibits). Crotts' defense counsel and the district attorney filed motions for a protective order in the criminal proceeding. Following a hearing, the court denied both motions for a protective order and ordered the district attorney to "provide access to the plaintiff of the physical exhibits introduced at the trial in *State v. Crotts,* 91 CrS 19956, 19957, now in his custody. . . ." The court declined to compel disclosure of the copy of the trial transcript in the district attorney's possession.

TIMES-NEWS PUBLISHING CO. v. STATE OF N.C.

[124 N.C. App. 175 (1996)]

The sole question presented on appeal is whether the trial court erred by ordering the district attorney to provide plaintiff access to previously admitted trial exhibits which were returned to the district attorney's office for use in the reinvestigation and preparation for retrial.

The Public Records Act, N.C. Gen. Stat. § 132-1 to -10 *et seq.* (1995) (The Act), affords the public a broad right of access to records in the possession of public agencies and their officials. "Public records" as defined by the statute may include the following:

> all . . . material, regardless of physical form· or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government. . . .

N.C. Gen. Stat. § 132-1(a). Our courts have interpreted The Act to allow the public access to all public records in an agency's possession unless either the agency or the record is specifically exempted from the statute's mandate.

The defendants contend that the trial exhibits at issue are specifically exempted from classification as public records pursuant to N.C. Gen. Stat. § 132-1.4(a) which provides:

> (a) Records of criminal investigations conducted by public law enforcement agencies or records of criminal intelligence information compiled by public law enforcement agencies **are not public records** as defined by G.S. 132-1. Records of criminal investigations conducted by public law enforcement agencies or records of criminal intelligence information may be released by order of a court of competent jurisdiction.

N.C. Gen. Stat. § 132-1.4(a) (1995) (emphasis added). The General Assembly amended the law to clarify that "[d]isclosure of records of criminal investigations and criminal intelligence information that have been transmitted to a district attorney or other attorney authorized to prosecute a violation of law shall be governed by this section and Chapter 15A of the General Statutes [relating to criminal discovery procedures]. *See* N.C. Gen. Stat. § 132-1.4(g). The Act also clarifies that only the following limited materials may be available to the public from a district attorney's case file:

> (1) The time, date, location, and nature of a violation or apparent violation of the law reported to a public law enforcement agency.

(2) The name, sex, age, address, employment, and alleged violation of law of a person arrested, charged, or indicted.

(3) The circumstances surrounding an arrest, including the time and place of the arrest, whether the arrest involved resistance, possession or use of weapons, or pursuit, and a description of any items seized in connection with the arrest.

(4) The contents of "911" and other emergency telephone calls received by or on behalf of public law enforcement agencies, except for such contents that reveal the name, address, telephone number, or other information that may identify the caller, victim, or witness.

(5) The contents of communications between or among employees of public law enforcement agencies that are broadcast over the public airways.

(6) The name, sex, age, and address of a complaining witness.

N.C. Gen. Stat. § 132-1.4(c). Thus, it is clear from the statute's plain language that the criminal investigative materials transmitted to the district attorney's office in preparation for the initial prosecution of Crotts were exempted from classification as public records.

Plaintiff, however, contends that the exhibits lost their exemption when the exhibits were released into the "public domain" upon their admission into evidence during the first Crotts' trial. As support for its argument plaintiff relies on the case *News and Observer Publishing Co. v. Poole*, 330 N.C. 465, 474, 412 S.E.2d 7, 12 (1992). In their brief, plaintiff espouse that *"Poole* specifically holds that records once-exempt from the Public Records Act's mandatory disclosure requirement lose their exempt status when introduced into the public domain." We decline to adopt such an interpretation of *Poole* in the instant case.

*Poole* involved the issue of whether SBI investigative records retained their N.C. Gen. Stat. § 114-15 exemption after the SBI submitted its reports to the Poole Commission, a Commission appointed by the president of the University of North Carolina. *Id.* The Supreme Court held that:

When such reports become part of the records of a public agency subject to the Public Records Act, they are protected only to the

> extent that agency's records are protected. When the SBI inves-
> tigative reports here became Commission records, they . . .
> became subject to disclosure under the Public Records Law to
> the same extent as other Commission records.

*Id.* at 474, 412 S.E.2d at 12-13. Thus, *"Poole's* legacy is therefore that
the public records law mandated the release of draft reports and min-
utes from closed meetings of state commissions." *Thomas H. Moore,*
Comment, *You Can't Always Get What You Want: A Look at North
Carolina's Public Records Law,* 72 N.C.L. Rev. 1527, 1560 (1994).
However, investigative reports by the SBI in the possession of district
attorneys and local law enforcement are still not subject to release.
*Id.* Thus, the analysis remains primarily a statutory one. To determine
whether particular material is exempted from classification as a
public record depends upon whether the agency or the record is
specifically exempted from the statute's mandate.

Notwithstanding the fact that the exhibits may have been acces-
sible when they were admitted into evidence and in the possession of
the clerk of court, the trial exhibits were returned to the district attor-
ney's office at the conclusion of the trial in *State v. Crotts,* 91 CrS
19956 and 19957 for use in the reinvestigation and preparation of
Crotts' retrial. Therefore, unlike *Poole* where exempted materials
were transmitted to an agency whose records were subject to disclo-
sure, here the exempted exhibits have been transmitted to the district
attorney's office and as such are specifically exempted from disclo-
sure under N.C. Gen. Stat. § 132-1.4(g). Accordingly, based on the
plain meaning of N.C. Gen. Stat. § 132-1.4(a), these exhibits are once
again "records of criminal investigations" and as such are "not public
records."

To hold otherwise in this case would permit access to files in the
possession of the district attorney thereby creating the potential for
disruption in the reinvestigation and renewed prosecution of a double
murder case. Furthermore, even though plaintiff previously printed
numerous stories about the case and the evidence introduced during
Crotts' initial murder trial, there are sound policy reasons for denying
public access to criminal investigative materials. It remains important
to minimize the danger that a suspect will be tried in the press before
he/she is tried in court, to assure effective criminal investigations and
prosecutions, and to safeguard the adversarial process from disrup-
tion. Accordingly, we reverse the decision below and remand the case

MORGAN V. N.C. DEPT. OF TRANSPORTATION

[124 N.C. App. 180 (1996)]

to the trial court with instructions to vacate its order requiring disclosure of the trial exhibits.

Reversed and remanded.

Judges EAGLES and McGEE concur.