IN THE SUPREME COURT OF NORTH CAROLINA

No. 142PA18

Filed 1 May 2020

DTH MEDIA CORPORATION, CAPITOL BROADCASTING COMPANY, INC., THE CHARLOTTE OBSERVER PUBLISHING COMPANY, and THE DURHAM HERALD COMPANY

v.

CAROL L. FOLT, in her official capacity as Chancellor of The University of North Carolina at Chapel Hill, and GAVIN YOUNG, in his official capacity as Senior Director of Public Records for The University of North Carolina at Chapel Hill

On discretionary review pursuant to N.C.G.S. § 7A-31 from the decision of a unanimous panel of the Court of Appeals, 259 N.C. App. 61, 816 S.E.2d 518 (2018), reversing a judgment entered on 9 May 2017 by Judge Allen Baddour in Superior Court, Wake County. Heard in the Supreme Court on 27 August 2019.

*Stevens Martin Vaughn & Tadych, PLLC, by Hugh Stevens and Michael J. Tadych, for plaintiff-appellees.*

*Joshua H. Stein, Attorney General, by Stephanie A. Brennan, Special Deputy Attorney General, and Matthew Burke, Solicitor General Fellow, for defendant-appellants.*

*J.D. Jones Law, PLLC, by Jonathan D. Jones for Student Press Law Center and Brechner Center for Freedom of Information, amici curiae.*

*Fox Rothschild LLP, by Troy D. Shelton for Victim Rights Law Center, N.C. Coalition Against Sexual Assault, National Alliance to End Sexual Violence, National Network to End Domestic Violence, and the N.C. Coalition Against Domestic Violence, amici curiae.*

MORGAN, Justice.

This matter presents questions which require this Court to interpret the federal Family Educational Rights and Privacy Act (FERPA) and the North Carolina Public Records Act (the Public Records Act) in order to determine whether officials of The University of North Carolina at Chapel Hill (UNC-CH or University) are required to release, as public records, disciplinary records of its students who have been found to have violated UNC-CH's sexual assault policy. The Court of Appeals unanimously determined that such records are subject to mandatory disclosure. We affirm.

## Factual and Procedural Background

This case arises out of a dispute between various news organizations and officials of UNC-CH's administration. Plaintiffs DTH Media Corporation; Capitol Broadcasting Company, Inc.; The Charlotte Observer Publishing Company; and The Durham Herald Company (collectively, plaintiffs) are news organizations based in North Carolina which regularly report on matters regarding UNC-CH. Defendants are Carol L. Folt, the former Chancellor of UNC-CH and Gavin Young, the Senior Director of Public Records of UNC-CH (collectively, defendants). Plaintiffs brought this legal action against defendants in the defendants' official capacities for alleged violations of the Public Records Act. The Act was enacted by the North Carolina General Assembly in order to make public records readily available because they "are the property of the people." *See* N.C.G.S. §§ 132-1 to -11 (2017). Defendants contend that they are prohibited from complying with the Public Records Act in light of

applicable provisions of FERPA. The parties stipulated to the following facts, which were adopted by the lower courts and utilized in their respective determinations in the controversy prior to this Court's involvement.

Since 2014, UNC-CH has adhered to its comprehensive "Policy on Prohibited Discrimination, Harassment and Related Misconduct" that includes prohibitions on, and potential punishments for, sexual-based and gender-based harassment and violence. In a letter dated 30 September 2016, plaintiffs requested, pursuant to the Public Records Act, "copies of all public records made or received by [UNC-CH] in connection with a person having been found responsible for rape, sexual assault or any related or lesser included sexual misconduct by [UNC-CH's] Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office." The letter was addressed to officials of UNC-CH, including defendant Young. In a letter dated 28 October 2016 and signed by Joel G. Curran, UNC-CH's Vice Chancellor for Communications and Public Affairs, UNC-CH expressly denied plaintiffs' request. In his letter, Vice Chancellor Curran asserted that the records requested by plaintiffs were "educational records" as defined by FERPA and were thus "protected from disclosure by FERPA."

After subsequent communications between the parties, including mediation proceedings which were conducted pursuant to N.C.G.S. § 78-38.3E, plaintiffs narrowed the scope of their request for records which were held in the custody of UNC-CH to: "(a) the name of any person who, since January 1, 2007, has been found

responsible for rape, sexual assault or any related or lesser included sexual misconduct by the [UNC-CH] Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office; (b) the date and nature of each violation for which each such person was found responsible; and (c) the sanction[] imposed on each such person for each such violation." UNC-CH denied plaintiffs' revised, more limited request on 11 November 2016 during an in-person meeting, and further reiterated to plaintiffs on 18 November 2016 that the University would continue to decline plaintiffs' request for the records at issue pursuant to FERPA.

On 21 November 2016, following the continued denial of their request, plaintiffs filed a complaint and sought an order for defendants to show cause under the Public Records Act and the North Carolina Declaratory Judgments Act. *See* N.C.G.S. §§ 1-253 to -267. Plaintiffs sought in relevant part: (1) a preliminary order compelling defendants to appear and produce the records at issue; (2) an order declaring that the requested records are public records as defined by N.C.G.S. § 132-1; and (3) an order compelling defendants to permit the inspection and copying of these records, pursuant to N.C.G.S. § 132-9(a) in their capacity as public records.

Defendants filed their answer to plaintiffs' complaint and petition for the show cause order on 21 December 2016, claiming that "FERPA, a federal law that preempts the Public Records Act, strictly prohibits" the disclosure of the records at issue. More specifically, defendants asserted UNC-CH's position that

> [u]nder FERPA, the University has reasonably exercised

-4-

its discretion not to release this information, because doing
so would breach the confidentiality of the University's Title
IX process and would interfere with and undermine that
process. More specifically, disclosure of this information
would deter victims from coming forward and participating
in the University's Title IX process, thus preventing
victims from receiving the help and support available to
them through the University's Title IX process and
preventing the University from learning about potential
serial perpetrators, which would undermine the safety of
the campus community. Additionally, disclosure of this
information would permit the identification of victims by
members of the campus community who know their
relationship to the responsible person and by providing the
responsible student motivation to reveal the name of the
victim, which would lead to victims being re-traumatized.
Such disclosure would deter the participation of witnesses
and further impede the University's ability to render a fair,
just, and informed determination, and jeopardize the
safety of students found responsible during the Title IX
process by placing them at risk for retribution.

Following a hearing on plaintiffs' request for declaratory judgment which was
conducted on 6 April 2017, the Superior Court, Wake County entered an order and
final judgment filed on 9 May 2017 which, *inter alia*, denied plaintiffs' request for a
declaratory judgment in determining that defendants were not required to produce
the student records requested by plaintiffs.[1] In reaching its decision, the trial court
concluded that the Public Records Act does not compel the release of public records
where an exception is "otherwise specifically provided by law," and agreed with
defendants' position as expressed in the trial court's order and final judgment, that

---

[1] Both parties agree that the matter concerning UNC-CH employees' records which is
addressed in the trial court's order and final judgment is not at issue on appeal.

> [i]n 20 U.S.C. § 1232(b)(6), FERPA grants the University the discretion to determine whether to release (1) the name of any student found 'responsible' under University policy of a 'crime of violence' or 'nonforcible sex offense,' (2) the violation, and (3) the sanction imposed. The University may disclose (but is not required to disclose) this information only if the University determines that the student violated the University's rules or policies.

In applying principles enunciated in the United States Constitution and pertinent cases of the Supreme Court of the United States, the trial court entered conclusions of law that the doctrines of both field preemption and conflict preemption operate to implicitly preempt, by force of federal law, any required disclosure by North Carolina's Public Records Act of the requested records. Plaintiffs appealed the portion of the trial court's order and final judgment relating to the denial of access to the student records in dispute to the Court of Appeals.

In addressing the respective arguments of plaintiffs and defendants, the lower appellate court's analysis of the questions presented for resolution included the following subjects: the Public Records Act enacted by the North Carolina General Assembly, the Family Educational Rights and Privacy Act enacted by the United States Congress, the interaction between this state law and this federal law regarding their individual and joint impacts on the present case, and principles of federal preemption. In an effort to promote efficiency and to diminish repetition, we shall integrate the parties' respective arguments, the Court of Appeals' determinations, and the Court's conclusions throughout our opinion's overlapping treatment of them.

## Analysis

### A.     The legislative enactments

Plaintiffs initially asked defendants to provide copies of all public records made or received by UNC-CH in connection with any person having been found responsible for rape, sexual assault, or any related or lesser-included sexual conduct by UNC-CH's Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office. This request was made pursuant to the Public Records Act, which is codified in the North Carolina General Statutes in §§ 132-1 through 132-11. The request was subsequently narrowed to encompass records in the custody of UNC-CH that included (a) the name of any person who, since January 1, 2007, had been found responsible for rape, sexual assault, or any related or lesser-included sexual misconduct by the UNC-CH Honor Court, the Committee on Student Conduct, or the Equal Opportunity and Compliance Office; (b) the date and nature of each violation for which each such person was found responsible; and (c) the sanctions imposed on each such person for each such violation.

In its totality, N.C.G.S. § 132-1 reads as follows:

> (a) "Public record" or "public records" shall mean all documents, papers, letters, maps, books, photographs, films, sound recordings, magnetic or other tapes, electronic data-processing records, artifacts, or other documentary material, regardless of physical form or characteristics, made or received pursuant to law or ordinance in connection with the transaction of public business by any agency of North Carolina government or its subdivisions.

Agency of North Carolina government or its subdivisions shall mean and include every public office, public officer or official (State or local, elected or appointed), institution, board, commission, bureau, council, department, authority or other unit of government of the State or of any county, unit, special district or other political subdivision of government.

(b) The public records and public information compiled by the agencies of North Carolina government or its subdivisions are the property of the people. Therefore, it is the policy of this State that the people may obtain copies of their public records and public information free or at minimal cost unless otherwise specifically provided by law. As used herein, "minimal cost" shall mean the actual cost of reproducing the public record or public information.

N.C.G.S. § 132-9(a) states, in its entirety:

Any person who is denied access to public records for purposes of inspection and examination, or who is denied copies of public records, may apply to the appropriate division of the General Court of Justice for an order compelling disclosure or copying, and the court shall have jurisdiction to issue such orders if the person has complied with G.S. 7A-38.3E.[2] Actions brought pursuant to this section shall be set down for immediate hearing, and subsequent proceedings in such actions shall be accorded priority by the trial and appellate courts.

In declining plaintiffs' request for the identified records in its custody, UNC-CH interpreted the Family Educational Rights and Privacy Act—codified at 20 United States Code Section 1232g—to permit UNC-CH the ability to deny access to the records at issue, based upon its obligation to comply with Title IX of the Education

---

[2] N.C.G.S. § 7A-38.3E governs the mediation of public records disputes.

Amendments of 1972, found in 20 U.S.C. §§ 1681–88. Pertinent provisions of FERPA regarding the parties' respective positions, the trial court's order and final judgment, the Court of Appeals decision, and this Court's determination include salient segments of:

- 20 U.S.C. § 1232g(a)(4)(A): "For the purposes of this section, the term 'education records' means . . . those records, files, documents, and other materials which[ ] (i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution";

- 20 U.S.C. § 1232g(b)(1): "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . .) of students without the written consent of their parents . . .";

- 20 U.S.C. § 1232g(b)(2): "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information . . . except . . . such information is furnished in compliance with judicial order . . . upon condition that parents and the students are notified of all such orders . . . in advance of the compliance therewith by the educational institution or agency . . .";

- 20 U.S.C. § 1232g(b)(6)(B): "Nothing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged

perpetrator of any crime of violence . . . or a nonforcible sex offense, if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense";

- 20 U.S.C. § 1232g(b)(6)(C): "For the purpose of this paragraph, the final results of any disciplinary proceeding[ ] (i) shall include only the name of the student, the violation committed, and any sanction imposed by the institution on that student; and (ii) may include the name of any other student, such as a victim or witness, only with the written consent of that other student"; and

- 20 U.S.C § 1681(a): "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ."

## B. Consideration and application of the Public Records Act and the Family Educational Rights and Privacy Act

This Court reviews issues of statutory interpretation *de novo*. "The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson,* 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman*, 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998). "The cardinal principle of statutory construction is that the intent of the legislature is controlling. In ascertaining the legislative intent courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish." *State ex rel. Util. Comm'n v. Public Staff*, 309 N.C. 195, 210, 306 S.E.2d 435, 443-44 (1983) (citations omitted). "When construing legislative provisions, this Court looks first to the plain meaning

of the words of the statute itself[.]" *State v. Ward*, 364 N.C. 157, 160, 694 S.E.2d 729, 731 (2010). "When multiple statutes address a single matter or subject, they must be construed together, *in pari materia*, to determine the legislature's intent." *Carter-Hubbard Publ'g Co., Inc. v. WRMC Hosp. Operating Corp.*, 178 N.C. App. 621, 624, 633 S.E.2d 682, 684 (2006), *aff'd*, 361 N.C. 233, 641 S.E.2d 301 (2007). "Statutes *in pari materia* must be harmonized, 'to give effect, if possible, to all provisions without destroying the meaning of the statutes involved.'" *Id* (citation omitted). As we said in *Empire Power Co. v. N.C. Dept. of E.H.N.R.*, 337 N.C. 569, 447 S.E.2d 768 (1994), a case upon which both parties rely to support their respective views here regarding statutory construction and its *in pari materia* component:

> as in any area of law, the primary function of a court is to ensure that the purpose of the Legislature in enacting the law, sometimes referred to as legislative intent, is accomplished . . . We should be guided by the rules of construction that statutes *in pari materia*, and all parts thereof, should be construed together and compared with each other. Such statutes should be reconciled with each other when possible.

*Id.* at 591, 447 S.E.2d at 781.

In the present case, the state's legislative body—the North Carolina General Assembly—has clearly expressed its intent through the Public Records Act to make public records readily accessible as "the property of the people," as described in N.C.G.S. § 132-1(b). There is no dispute between plaintiffs and defendants before this Court that the student disciplinary records meet the definition of "public records"

under N.C.G.S. § 132-1, that UNC-CH comes within the purview of the Public Records Act, and that said records are within the custody and control of UNC-CH. The Public Records Act "affords the public a broad right of access to records in the possession of public agencies and their officials." *Times-News Publ'g Co. v. State of N.C.*, 124 N.C. App. 175, 177, 476 S.E.2d 450, 451-52 (1996) *disc. review denied*, 345 N.C. 645, 483 S.E.2d 717 (1997). The Act is intended to be liberally construed to ensure that governmental records be open and made available to the public, subject only to a few limited exceptions. The Public Records Act thus allows access to all public records in an agency's possession "*unless* either the agency or the record is specifically exempted from the statute's mandate." *Times-News*, 124 N.C. App. at 177, 476 S.E.2d at 452 (emphasis added). "Exceptions and exemptions to the Public Records Act must be construed narrowly." *Carter-Hubbard Publ'g Co.*, 178 N.C. App. at 624, 633 S.E.2d at 684.

As for the Family Educational Rights and Privacy Act, the federal legislative body—the United States Congress—has clearly expressed its intent through FERPA that the ready accessibility of education records exhibited by an "educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein other than directory information . . .) of students without the written consent of their parents . . ." shall result in "[n]o funds . . . be[ing] made available under any applicable program" to such an educational agency or institution, pursuant to 20 U.S.C. § 1232g(b)(1). Just as the

student disciplinary records at issue in the instant case are considered to be "public records" under the state's Public Records Act, they are also considered to be "education records" under FERPA; just as UNC-CH is deemed to be an "agency of North Carolina government or its subdivisions" under the Public Records Act, it is also deemed to be an "educational agency or institution" under FERPA.

Defendants have chosen to construe FERPA in such a manner that they have considered UNC-CH to be prohibited "from disclosing 'education records,' including records related to sexual assault investigations and adjudications governed by Title IX." Regarding "campus disciplinary adjudications of sexual assault," UNC-CH opines that "FERPA prohibits the disclosure of education records but grants universities discretion to determine whether to disclose three items of information: the name of the responsible student, the violation, and the sanction imposed." In light of its construction of FERPA and this federal law's perceived concomitant relationship with Title IX as embodied in 20 U.S.C. § 1681(a), *et seq*, UNC-CH assumes the posture as to the release of the student disciplinary records which are the focus of this legal controversy, that "the University has exercised its discretion and has declined to disclose this information because the University has determined that the release of this information would lead to the identification of victims, jeopardize the safety of the University's students, violate student privacy, and undermine the University's efforts to comply with Title IX."

Defendants' justification for its interpretation of FERPA in this subject matter area is premised on its application of FERPA's provision of 20 U.S.C. § 1232g(b)(6)(B), from which it is surmised that UNC-CH has the discretion to determine whether to release information about a student disciplinary proceeding outcome, and FERPA's provision of 20 U.S.C. § 1232g(b)(6)(C)(i), which limits the divulgence of "the final results of any disciplinary proceeding" to "the name of the student, the violation committed, and any sanction imposed by the institution or that student . . . ." Defendants discern that the phrase contained in 20 U.S.C. § 1232g(b)(6)(B), "*if* the institution *determines* as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense" (emphasis added) impliedly cloaks UNC-CH with the discretionary authority to determine whether to release the outcome of a student disciplinary proceeding in light of the introductory portion of the provision that "[n]othing in this section shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged perpetrator of any crime of violence . . . or a nonforcible sex offense . . . ." It is compelling in light of the Court's duty to observe and to implement the aforementioned canons of statutory construction, that there is no express provision in FERPA that reposes the authority in UNC-CH to exercise the discretion that it purports to have. On the other hand, plaintiffs assert that there is no conflict between the state's Public Records Act and the federal law,

FERPA, that the Public Records Act and its underlying legislative intent support liberal access to the records at issue here, and that the Court of Appeals is correct in its determination that the two legislative enactments which govern these records can and should be construed *in pari materia* so as to afford plaintiffs the access to the student disciplinary records which is sought.

We conclude that the Court of Appeals correctly held that 20 U.S.C. § 1232g(b)(6)(B) did not grant implied discretion to UNC-CH to determine whether to release the results of a student disciplinary proceeding emanating from rape, sexual assault, or sexual misconduct charges in absence of language expressly granting such discretion. We also note that the lower appellate court properly recognized that "[p]laintiffs' records request is limited to students who UNC-CH has already expressly determined to have engaged in such misconduct, and the records of which are expressly subject to disclosure under FERPA." *DTH v. Folt*, 259 N.C. App. at 69, 816 S.E.2d at 524 (citing 20 U.S.C. § 1232g(b)(6)(B)). Since FERPA contains no such language, but instead specifies that the categories of records sought here are public records subject to disclosure—"Nothing in this section shall be construed to prohibit an institution of postsecondary education from disclosing . . ."—we see no conflict between the federal statute and the state Public Records Act. This North Carolina law has been interpreted consistently by our state courts as intended for liberal construction affording ready access to public records, subject to limited exceptions. *See Carter-Hubbard Publ'g Co.*, 178 N.C. App. at 624, 633 S.E.2d at 684.

Accordingly, we conclude, as did the Court of Appeals, that defendants' contended interpretation of the two statutes "conflicts with both the Public Records Act's mandatory disclosure requirements and the plain meaning of FERPA's § 1232g(b)(6)(B), which allows disclosure." *Id*. at 70–71, 816 S.E.2d at 525. This result reconciles and harmonizes the Public Records Act and the Family Educational Rights and Privacy Act, while preserving the integrity of the well-established doctrines which guide proper statutory construction. It also reinforces that the Public Records Act may be available to compel disclosure through judicial process if necessary, in the face of a denial of access to such records.

Unfortunately, the dissent subscribes to UNC-CH's depiction of the University's discretion "to produce the records at issue upon request by a third party if it chooses to do so *in the exercise of its independent judgment*." In embracing the position of UNC-CH that the institution possesses such pervasive discretion in light of the federal law, the dissent strives to justify its acceptance of this representation by combining the open-ended, non-prohibitive beginning phrase of 20 U.S.C. § 1232g(b)(6)(B), "*Nothing in this section shall be construed* to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student . . ." (emphasis added) with the permissive introductory language of 34 C.F.R. § 99.31(a), "An educational agency or institution *may* disclose personally identifiable information from an education record of a student . . ." (emphasis added) so as to allow this tandem of

federal law provisions to operate as though the state's Public Records Act does not exist. Indeed, it is a fairly elementary deduction, in neatly configuring these two separate segments of federal enactments into the single determinant which the dissent declares, that "Nothing in this section [20 U.S.C. § 1232g(b)(6)(B)] shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student . . . [such that] [a]n educational agency or institution may disclose personally identifiable information from an education record of a student . . . ." We agree that, standing alone, a postsecondary educational institution possesses such discretion to disclose. However, when such a postsecondary educational institution is a *public* postsecondary educational institution such as UNC-CH, operating as an undisputed "agency of North Carolina" under the Public Records Act and therefore subject to comply with requests for public records when asserted under N.C.G.S. § 132-1, then "[n]othing in this section [20 U.S.C. § 1232g(b)(6)(B)] shall be construed to prohibit an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student."

Therefore, in properly applying the foundational principles of statutory construction so as to reconcile multiple legislative enactments in an effort to harmonize their joint and mutual operation, the established methodology to be applied here would be an examination, in the first instance, of the state law's mandatory Public Records Act provision and the federal law's permissive Code of

Federal Regulations language which supplements FERPA's open-ended and non-prohibitive language, instead of the dissent's employment of the erroneous methodology of initially combining the two federal provisions, thus developing in a vacuum the flawed conclusion consistent with UNC-CH's view that the University commands discretion over the release of the public records, and only then secondarily considering the operation of the Public Records Act after having prematurely succumbed to the conclusions that "a university has the authority to produce the records at issue upon request by a third party if it chooses to do so in *the exercise of its independent judgment*" and "the doctrine of conflict preemption is directly applicable" which would preclude the operation of the Public Records Act in the present case. Plaintiffs submitted their request for the records at issue to the University pursuant to the Public Records Act because of the educational institution's status as an "agency of North Carolina." It is therefore appropriate, due to the mandatory nature of the state law and the liberal construction which our state courts have given it, to look initially at the application of the Public Records Act in light of plaintiffs' request, then assess whether there are any other legislative provisions of any sort which present potential conflict with the operation of the Public Records Act, and then implement the established principles of statutory construction to reconcile such provisions. *See Times-News*, 124 N.C. App. at 177, 476 S.E.2d at 452 (The Public Records Act allows access to all public records in an agency's possession "*unless either the agency or the record is specifically exempted from the statute's mandate.*"

(emphasis added)). In the present case, however, the dissent elects to ignore the logical inception of the analysis by vaulting the state's Public Records Act, grasping the federal nature of FERPA and the cited provision from the Code of Federal Regulations, and concluding that an opening assessment of the applicability of the state law upon which plaintiffs' records request is expressly premised leads to a "look to North Carolina law to determine congressional intent." The dissent's depiction and conclusion are both inaccurate. This defective approach by the dissent miscalculates the authority of 20 U.S.C. § 1232g(b)(6)(B) and 34 C.F.R. § 99.31 in the face of N.C.G.S. §132-1, by erroneously elevating the authority of the federal law's application here while wrongfully subjugating the authority of the state law's express mandates which require that the public records at issue be released in the dearth of any federal law express mandates which require that these public records be withheld.

Consistent with the rule of statutory construction to regard the plain meaning of the words of a statute, 20 U.S.C. § 1232g(b)(6)(C) allows only the disclosure of the name of the student, the violation committed, and any sanction imposed by the institution on that student upon the release of the final results of any disciplinary proceeding. We agree with the Court of Appeals that the dates of offenses which were requested by plaintiffs pursuant to the Public Records Act are not subject to disclosure under FERPA; therefore, UNC-CH is only required to disclose to plaintiffs, pursuant to the operation of the Public Records Act, the name of the student, the

violation committed, and any sanction imposed by UNC-CH on that student upon the release of the final results of any disciplinary proceeding.

## C.    Examination of the federal preemption doctrine

Defendants invoke the doctrine of federal preemption in contending that "[e]ven if the [state's] Public Records Act mandated disclosure, FERPA would preempt the Act through conflict preemption[,]" and "FERPA also preempts the Public Records Act because mandating disclosure frustrates the purposes of federal law, which allocates to the University the ability to decide whether disclosure best promotes the prevention of sexual assaults and misconduct on a campus." Additionally, defendants posit that "FERPA's discretion also conflicts with the Public Records Act's purported disclosure mandate." These federal preemption theories, which are posited by defendants, are all based on the faulty premise that UNC-CH has the discretion to determine whether to release the final results of any student disciplinary proceeding—a postulation which we have already nullified in our earlier analysis. While defendants claim that "[c]onflict preemption applies because compliance with both FERPA and the Public Records Act is impossible here," we have already determined in this case that such compliance is possible. Although defendants argue that "FERPA and the Public Records Act conflict because the University cannot both exercise discretion about releasing information and be forced to release records containing that information," we have heretofore established in this case that the two Acts do not conflict under these circumstances as well as held in

this case that UNC-CH does not have the discretion regarding the release of the information at issue. Nonetheless, since our learned colleagues who are in the dissent have addressed their view of the role of the doctrine of federal preemption in this case and since the lower appellate court addressed the subject of the applicability of the federal preemption doctrine in notable detail in its opinion, we elect to examine the principle to a warranted degree.

Generally, if a state law conflicts with a federal law that regulates the same conduct, the federal law prevails under the doctrine of preemption. "A reviewing court confronting this question begins its analysis with a presumption against federal preemption." *State ex rel Utilities Comm'n v. Carolina Power & Light Co.*, 359 N.C. 516, 525, 614 S.E.2d 281, 287 (2005); *see also Hillsborough Cty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715 (1985). The presumption is grounded in the fact that a finding of federal preemption intrudes upon and diminishes the sovereignty accorded to states under our federal system. Indeed, in *Wyeth v. Levine*, the United States Supreme Court explained that "[i]n all [preemption] cases, and particularly those in which Congress has 'legislated . . . in a field which the States have traditionally occupied' . . . we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" 555 U.S. 555, 565 (2009) (alterations in original) (quoting *Medtronic, Inc. v. Lovr*, 518 U.S. 470, 485 (1996)). The exercise of such authority by the United States Congress, where shown clearly and manifestly by the

federal legislative body, is known as "express preemption"; however, Congress may also achieve such a result through "implicit preemption." Congress may consequently preempt, i.e. invalidate, a state law through federal legislation. It may do so through express language in a statute. But even where a statute does not refer expressly to preemption, Congress may implicitly preempt a state law, rule, or other state action. *Oneok, Inc. v. Learjet, Inc.,* 575 U.S. 373, 376 (2015). Congress may implement implicit preemption either through conflict or field preemption. *Id.* "Conflict preemption exists where 'compliance with both state and federal law is impossible' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* at 377 (citing *California v. AR Calmenica Corp.*, 490 U.S. 93, 100–01 (1989)). As to field preemption, "Congress has forbidden the State to take action in the *field* that the federal statute preempts." *Id.*

The Court of Appeals, in the present case, considered both types of the conflict preemption aspect of the federal preemption doctrine and determined that there was no conflict between the federal law, FERPA, and the state's Public Records Act, because compliance by UNC-CH with both of them is possible. As the lower tribunal noted in considering the first type, "[d]efendants would not violate § 1232g(b)(6)(B) by disclosing and releasing the records Plaintiffs requested in order to comply with the Public Records Act." *DTH v. Folt*, 259 N.C. App. at 74, 816 S.E.2d at 527. With regard to the second type, the Court of Appeals reasoned that "the Public Records Act disclosure requirements do not 'stand as an obstacle to the accomplishment and

execution of the full purposes and objectives of Congress,' " in that "[t]he plain text of § 1232g(b)(6)(B) permits Defendants' disclosure of the limited information specifically listed therein." *Id*. (quoting *Oneok*, 575 U.S. at 377). Although in our view the Court of Appeals analyzed conflict preemption unnecessarily as explained above, it nonetheless applied the doctrine correctly in general, and *Oneok* in particular.

The dissent unequivocally views FERPA as preventing the operation of the Public Records Act in the present case, opining that "[a] federal law that grants discretion is fundamentally irreconcilable with a state law that seeks to override that discretion." In this analytical exercise, the dissent again begins with the fundamental misstep that the FERPA provision of 20 U.S.C. § 1232g(b)(6)(B) is buttressed by 34 C.F.R. § 99.31 so as to establish a federally entrenched discretion for a *public* postsecondary educational institution like UNC-CH which is mandatorily subject to the Public Records Act as a state agency before the dissent is inclined to include the state law in its contemplation. This misstep, in turn, leads to the dissent's logical— though erroneous due to the faulty original premise—sequential misstep that "the federal law and state law fundamentally conflict." Consequently, instead of utilizing the aforementioned established tenets of statutory construction "that statutes *in pari materia,* and all parts thereof, should be construed together and compared with each other [because] [s]uch statutes should be reconciled with each other when possible," *Empire Power,* 337 N.C. at 591, 447 S.E.2d at 781, the dissent chooses to construe the cited principles in *Oneok* to support the applicability of the doctrine of conflict

preemption in the instant case. Ultimately, as a result of the misapprehended precursors, the dissent arrives at its conclusion that conflict preemption exists here, as the principle is explained in *Oneok*.

*Oneok* presented an opportunity for the Supreme Court of the United States to address the issue of whether the federal Natural Gas Act preempted state antitrust lawsuits against interstate pipelines which would be based upon non-federally regulated retail natural gas prices. *Oneok,* 575 U.S. at 376. In holding that the state's antitrust claims were not preempted by the federal Natural Gas Act, the high court explained that an examination of the applicability of preemption must "emphasize the importance of considering the *target* at which the state law aims in determining whether that law is preempted." *Id.* at 377. Just as the United States Supreme Court determined in *Oneok* that it would not find the operation of the principle of conflict preemption as appropriate in construing the federal law and the state law, we agree with the overarching principle enunciated in *Oneok* and therefore apply it here. While conflict preemption exists where compliance with both state and federal law is impossible or where the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, conflict preemption does not exist in the present case because compliance with both the Public Records Act and FERPA is possible, and the Public Records Act does not stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress regarding the governance of education under Title 20 of the Unites States Code.

Lastly, defendants' reliance on *United States v. Miami University*, 294 F.3d 797 (6th Cir. 2002) to establish the existence of the field preemption aspect of the federal preemption doctrine to this Court's satisfaction is unpersuasive. While we reiterate that the analysis which this Court elects to engage is arguably superfluous due to defendants' illustrated misassumptions, we choose to evaluate this remaining feature of the federal preemption doctrine in order to address defendants' contention that in *Miami University*, "[t]he court rejected claims that the Ohio public records law was broad and required disclosure." However, while the Sixth Circuit Court of Appeals acknowledged that FERPA generally shields student disciplinary records from release, the exception to the Act's disclosure prohibitions in *Miami University* which has direct application to the instant case was viewed by the federal appellate court in the following manner:

> Congress balanced the privacy interests of an alleged perpetrator of any crime of violence or nonforcible sex offense with the rights of the alleged victim of such a crime and concluded that the right of an alleged victim to know the outcome of a student disciplinary proceeding, regardless of the result, outweighed the alleged perpetrator's privacy interest in that proceeding. *Congress also determined that, if the institution determines that an alleged perpetrator violated the institution's rules with respect to any crime of violence or nonforcible sex offense, then the alleged perpetrator's privacy interests are trumped by the public's right to know about such violations.*

294 F.3d 797, 812-813 (2002) (emphasis added).

The federal appellate court's ruling in *Miami University* clearly demonstrates that the principle of field preemption does not apply to this case and that defendants' dependence on its operation here is misplaced. Although FERPA is a legislative enactment of Congress, nevertheless the public records law of Ohio was deemed to be the prevailing authority where the access to information about the result of a student disciplinary proceeding regarding any allegation of a crime of violence or nonforcible sex offense outweighed the alleged student perpetrator's privacy interests which are generally protected by FERPA. In light of the strong parallels between the state public records laws of Ohio and North Carolina, the subject matter of the disclosure of the outcomes of the types of student disciplinary proceedings of educational institutions located in each of the two states, and each university's respective reliance on the applicability of the field preemption doctrine based on a contention that FERPA preempts the operation of such a state public records law, we embrace the logic of the Sixth Circuit Court of Appeals. In enacting FERPA, Congress has not forbidden North Carolina's legislative body from taking action in the field of education where the disclosure of the result of a student disciplinary proceeding conducted at a public postsecondary educational institution which operates as an agency of North Carolina is mandated by the state's Public Records Act. Consequently, defendants' reliance on the principle of field preemption fails.

In the instant case, the federal preemption doctrine does not apply; therefore, the Family Educational Rights and Privacy Act does not preempt the Public Records

Act so as to prohibit UNC-CH from disclosing the final results of any disciplinary proceeding as requested by plaintiffs.

**Conclusion**

We hold that officials of The University of North Carolina at Chapel Hill are required to release as public records certain disciplinary records of its students who have been found to have violated UNC-CH's sexual assault policy. The University does not have discretion to withhold the information sought here, which is authorized by, and specified in, the federal Family Educational Rights and Privacy Act as subject to release. Accordingly, as an agency of the state, UNC-CH must comply with the North Carolina Public Records Act and allow plaintiffs to have access to the name of the student, the violation committed, and any sanction imposed by the University on that student in response to plaintiffs' records request.

AFFIRMED.

Justice DAVIS, dissenting.

I respectfully dissent. The majority's analysis fundamentally misapplies the federal preemption doctrine. As discussed more fully below, the dispositive issue in this case is whether FERPA confers discretion upon universities regarding whether to release the category of records at issue. If FERPA does so, then the doctrine of preemption precludes states from mandating that universities exercise that discretion in a certain way.

The threshold question of whether such discretion exists must be resolved solely by examining the relevant *federal* law, which in this case consists of FERPA and its accompanying federal regulations. The majority goes astray in this inquiry by instead looking to *state* law to determine whether discretion has been conferred. In doing so, the majority turns the preemption analysis on its head. It simply makes no sense to examine a provision of state law to determine whether *Congress* has conferred discretion upon universities.

The essence of the preemption doctrine is that state law cannot conflict with federal law. In this case, the specific question is whether the application of the North Carolina Public Records Act—which, in the absence of FERPA, would require defendants to produce these records—would be inconsistent with how Congress has authorized universities to treat such records. Therefore, because this inquiry solely concerns the intent of Congress, it is illogical to look to North Carolina law to determine congressional intent. It is only once a determination has been made as to

whether *federal* law confers such discretion that it then becomes appropriate to examine state law to ascertain whether a conflict exists between state and federal law on the issue. But state law has no bearing on the issue of whether such discretion exists in the first place. It is this basic error that infects the majority's entire analysis and causes it to reach a result that is legally incorrect.

The specific provision of FERPA relevant to this case is 20 U.S.C. § 1232g(b)(6)(B) (2018), which provides, in pertinent part, as follows:

> *Nothing in this section shall be construed to prohibit* an institution of postsecondary education from disclosing the final results of any disciplinary proceeding conducted by such institution against a student who is an alleged perpetrator of any crime of violence . . . or a nonforcible sex offense, if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense.

*Id*. (emphasis added). This statutory provision is supplemented by the following pertinent provisions contained in regulations promulgated by the United States Department of Education and codified in the Code of Federal Regulations:

> (a) An educational agency or institution *may* disclose personally identifiable information from an education record of a student . . . if the disclosure meets one or more of the following conditions:
>
> . . . .
>
> (14)
>
> > (i) The disclosure . . . is in connection with a disciplinary proceeding at an institution of postsecondary education. The institution must not disclose the final results of the disciplinary proceeding unless it determines that—
> >
> > > (A) The student is an alleged perpetrator of a crime of

violence or non-forcible sex offense; and

(B) With respect to the allegation made against him or her, the student has committed a violation of the institution's rules or policies.

34 C.F.R. § 99.31(a)(14)(i) (2019) (emphasis added).

The regulations then proceed to clarify that "paragraph[ ] (a) . . . of this section *do[es] not require* an educational agency or institution . . . to disclose education records or information from education records to any party, *except for parties under paragraph (a)(12) of this section*." 34 C.F.R. § 99.31(d) (emphasis added). Paragraph (a)(12), in turn, applies only to the disclosure of information "to the parent of a student . . . or to the student." 34 C.F.R. § 99.31(a)(12).

Thus, FERPA's grant of discretion to universities regarding the release of these records to third parties such as plaintiffs is evidenced by the pertinent language of the statute itself read in conjunction with the language of the accompanying federal regulations. As quoted above, the applicable provision of FERPA states that "[n]othing in this section shall be construed to prohibit" disclosure—language that neither prohibits nor requires the release by universities of the category of records sought by plaintiffs. 20 U.S.C. § 1232g(b)(6)(B). This permissive language is then reinforced by the language of the accompanying federal regulations, which remove any doubt on this issue. These regulations plainly and unambiguously state that a university "may"—but is "not require[d]" to— disclose such records to parties other than the students themselves and their parents. 34 C.F.R. § 99.31(a), (d). Thus, the

combined effect of 20 U.S.C. § 1232g(b)(6)(B) and 34 C.F.R. § 99.31 serves to make clear that a university has the authority to produce the records at issue upon request by a third party if it chooses to do so in the exercise of its independent judgment.

The Supreme Court of the United States—like this Court—has made clear that when a statute says an actor "may" take certain action, such language constitutes a grant of discretion to that actor. *See, e.g., Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1931 (2016) ("[W]e have emphasized that the word 'may' clearly connotes discretion."); *Jama v. Immigration and Customs Enf't*, 543 U.S. 335, 346 (2005) ("The word 'may' customarily connotes discretion."); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994) ("The word 'may' clearly connotes discretion."); *United States v. Rodgers*, 461 U.S. 677, 706 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion."); *see also Silver v. Halifax Cty. Bd. of Comm'rs*, 371 N.C. 855, 863–864, 821 S.E.2d 755, 760–762 (2018) (explaining that the word " 'may' is generally intended to convey that the power granted can be exercised in the actor's discretion").

Indeed, both in its appellate brief to this Court and at oral argument, plaintiffs' counsel *expressly conceded* that FERPA grants discretion to defendants regarding the release of the records sought in this lawsuit. *See* Pl.'s Br. at 12–13 ("In their brief defendants argue that . . . FERPA confers them with 'discretion' whether to release or withhold the records at issue. *Indeed, it does . . .*") (emphasis added).

This concession by plaintiffs' counsel is not surprising. Given the absence of

any dispute that the category of documents sought by plaintiffs in this case is, in fact, governed by 20 U.S.C. § 1232g(b)(6)(B), there are only three possible conclusions. FERPA either (1) *prohibits* universities from producing the records at issue; (2) *requires* that they produce the records; or (3) allows universities to exercise their own independent judgment over whether to produce them. Given that the majority does not take the position that Congress has either expressly required or expressly prohibited such disclosure, the only remaining option is the third one—that is, the conclusion that FERPA confers discretion on universities as to whether such records should be produced to a third party in a particular case. Indeed, at one point in its analysis, the majority appears to recognize that discretion exists under federal law, stating that "standing alone, a postsecondary educational institution possesses such discretion to disclose" these records.[1]

Because it is clear that such discretion exists under FERPA, the only remaining question is whether a state law such as North Carolina's Public Records Act can lawfully require that a university exercise its discretion in favor of disclosure. Under the doctrine of federal preemption, the answer is no. A university must be

---

[1] The majority also acknowledges that it is only because UNC-CH is a public institution that North Carolina's Public Records Act applies and therefore private educational institutions in this state unquestionably continue to possess the discretion granted by FERPA to decide whether to release the requested information. If there was no conflict between FERPA and the Public Records Act, then private and public institutions would be in the same situation. However, it is precisely because of that conflict that the majority's opinion results in different rules for post-secondary educational institutions in the state, depending on whether they are public or private.

allowed to exercise its federally mandated discretion unimpeded by a state law that seeks to eliminate that discretion.

The Supremacy Clause of the United States Constitution provides that "the Laws of the United States . . . shall be the supreme Law of the Land . . . [the] Laws of any State to the Contrary notwithstanding." Art. VI, cl. 2. As a result, "when federal and state law conflict, federal law prevails and state law is preempted." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 138 S. Ct. 1461, 1476 (2018). The Supreme Court of the United States has made clear that preemption can occur not only through a federal statute but also based on federal regulations. *See Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982) ("Federal regulations have no less preemptive effect than federal statutes."); *see also City of New York v. F.C.C.*, 486 U.S. 57, 64 (1988) ("The statutorily authorized regulations of an agency will pre-empt any state or local law that conflicts with such regulations or frustrates the purposes thereof.").

The Supreme Court has recognized three different forms of this doctrine: (1) express preemption, (2) field preemption, and (3) conflict preemption. *Murphy*, 138 S. Ct. at 1480. Express preemption occurs when a federal statute uses explicit language indicating its intent to override state law. *See English v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990). Field preemption occurs when Congress passes comprehensive legislation intending "to occupy an entire field of regulation," acting as the exclusive authority in that area and "leaving no room for the States to supplement federal law."

*Nw. Cent. Pipeline Corp. v. State Corp. Comm'n of Kansas*, 489 U.S. 493, 509 (1989).

The final type of preemption is conflict preemption (also known as implied preemption), which occurs when federal law and state law fundamentally conflict. Conflict preemption exists when (1) "compliance with both state and federal law is impossible" or (2) when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Oneok Inc. v. Learjet, Inc.*, 575 U.S. 373, 377 (2015).

The present case involves conflict preemption. A university cannot simultaneously (1) exercise its discretion conferred by FERPA regarding whether these records should be produced to third parties upon request; *and* (2) be automatically required by state law to produce those same records on demand. A federal law that grants discretion to universities is fundamentally irreconcilable with a state law that seeks to override that discretion. FERPA gives defendants a choice, while the Public Records Act gives them a command. As a result, the doctrine of conflict preemption is directly applicable.

In asserting that the doctrine of conflict preemption does not apply in this case, the majority misapprehends the basic inquiry in which a court must engage when faced with a federal preemption issue. If—as here—a conflict exists between state and federal law, the federal law must prevail. Thus, the majority's assertion that application of the preemption doctrine would require "erroneously elevating" the federal law while "wrongfully subjugating" the state law is, in reality, nothing less

than a rejection of the preemption doctrine itself.

While its opinion is not entirely clear, the majority then appears to state its belief that—even assuming discretion does exist under FERPA—the preemption doctrine is not triggered simply because releasing the records as mandated by North Carolina's Public Records Act is one of the options available to defendants in the exercise of their discretion. But this reasoning is antithetical to the very concept of discretion. Black's Law Dictionary defines discretion as "[w]ise conduct and management *exercised without constraint*; the ability coupled with the tendency to act with prudence and propriety . . . [f]reedom in the exercise of judgment; *the power of free decision-making*." *Black's Law Dictionary* (11th ed. 2019) (emphasis added). It is self-evident that a law that commands a single outcome necessarily conflicts with a separate law that grants the power of unconstrained decision-making.

Moreover, the Supreme Court of the United States has expressly rejected the very mode of reasoning engaged in by the majority. In *Barnett Bank of Marion Cty., N.A. v. Nelson*, 517 U.S. 25 (1996), a federal statute granted national banks the authority to sell insurance, but Florida law prohibited such banks from doing so. *Id.* at 27–28. The Supreme Court first noted that "the two statutes do not impose directly conflicting duties on national banks—as they would, for example, if the federal law said 'you must sell insurance,' while the state law said, 'you may not.' " *Id.* at 31. Nevertheless, the Supreme Court determined that the federal statute preempted the Florida law. *Id.* The Supreme Court characterized the conflict as involving a federal

statute that "authorizes national banks to engage in activities that the State Statute expressly forbids." *Id.* The Supreme Court concluded that when Congress grants an entity "an authorization, permission, or power," states may not "forbid, or [ ] impair significantly, exercise of a power that Congress explicitly granted." *Id.* at 33.

Similarly, in *Fidelity Fed. Sav. and Loan Ass'n v. de la Cuesta*, 458 U.S. 141 (1982), a federal regulation permitted savings and loan associations to utilize due-on-sale clauses in contracts, but California law limited the use of these clauses. *Id.* at 144–145. The Supreme Court held that the state law was preempted, explaining that the "conflict [between the laws] does not evaporate because the [ ] regulation simply permits, but does not compel" banks to include such clauses. *Id.* at 155. Just as in *Barnett*, the Supreme Court found it immaterial that compliance with both laws "may not be a physical impossibility," reasoning that the state law impermissibly deprived the banks of the "flexibility given it by the [federal regulation]." *Id. See also Lawrence Cty. v. Lead-Deadwood Sch. Dist. No. 40-1*, 469 U.S. 256, 260–61 (1985) (holding that a federal law providing that counties "may use [certain specified federal] payments for any governmental purpose" preempted a state law requiring counties to allocate those payments to school districts; rejecting as "seriously flawed" the state's argument that no preemption existed simply because the funding of school districts constituted a governmental purpose).

The same principles apply here. FERPA and its accompanying regulations gave defendants the discretion to decide whether release of the records sought by

plaintiffs was appropriate. The Public Records Act, conversely, would—if given effect—make the release of such records mandatory, thereby completely eliminating the discretion conferred by Congress. Therefore, the Public Records Act cannot be given effect under these circumstances. In short, a federal law's "may" cannot be constrained by a state law's "must."

For these reasons, I would reverse the decision of the Court of Appeals. Accordingly, I respectfully dissent. [2]

Justices ERVIN and EARLS join in this dissenting opinion.

---

[2] It is important to emphasize that this Court lacks the authority to determine whether the release of the records sought by plaintiffs is wise or unwise as a matter of public policy. Congress has expressly made that determination by conferring discretion upon universities regarding the disclosure of such information.